UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KELSEY JACKSON | CASE NO.<br>2:20-cr-00542-RMG<br><br>**MOTION FOR DOWNWARD DEPARTURE FROM GUIDELINES; MOTION FOR DOWNWARD VARIANCE PURSUANT TO 18 U.S.C 3553(a) FACTORS; & SENTENCING MEMORANDUM** |

COMES NOW Kelsey Jackson, by and through undersigned Counsel, and respectfully moves this Court as follows: (1) depart from the applicable Guidelines range pursuant to §5K2.20, and (2) grant a downward variance from the Guidelines range pursuant to the 18 U.S.C. §3553(a) factors.

Summary of Facts

In the wake of the national outrage over the murder of George Floyd by Minneapolis police officer Derek Chauvin, Kelsey Jackson traveled to downtown Charleston with his cousin Tearra Guthrie to join the growing protests on the evening of May 30, 2020. Jackson was not involved with politics, he was not an activist or a person who had ever participated in a political protest of any kind before May 30. But like many other Americans, he was uniquely affected by the horrifying images he saw on the television broadcasts that day. What was a unique and unprecedented moment in American history was also an unprecedented moment for Kelsey Jackson. He reports feeling outraged and saddened by the George Floyd video, and he wanted to join the chorus of voices venting their frustration and calling for reform. But Jackson did not intend to engage in any violence or destruction of property when he traveled downtown.

Jackson and Guthrie arrived downtown at approximately 5:00 p.m. that evening, and they joined a crowd of protestors who assembled outside of the Emanuel AME church. Jackson listened to several protestors with megaphones who delivered impassioned speeches about the injustices they perceived, and the crowd became more agitated as the evening wore on. Jackson became emotional when he heard these speeches, and as the crowd of protestors moved south towards Market Street, confrontations between the group and Charleston Police Department officers began to flare up. Jackson saw protestors flipping tables on Market Street, taunting the nearby police officers, and Jackson was surprised to see that the police were not intervening. Amidst the surreal scene with protestors causing property damage in plain view of nearby officers, Jackson made the fateful mistake of lighting a shirt with lighter fluid and throwing it onto the trunk of a vandalized police car. Demonstrating the suspension of his normal rational thought processes, Jackson broadcast these activities on the internet using Facebook, and even spoke with a Live5 news reporter about what he had done that evening. Due to the fact that Jackson made no effort to disguise his identity, he was quickly apprehended by Charleston police, and he made a full admission of all conduct alleged in this case. He has never denied responsibility for his actions, and has never sought to minimize his own culpability, and he comes before this Court ready to accept full responsibility.

<u>Objections to PSR, Guidelines Calculation</u>

Jackson reiterates his objection to the Presentence Report ("PSR"), which assigned a 12-level increase to Jackson's Guidelines calculation based on U.S.S.G. §3A1.4(a), which applies an enhancement in cases where the conduct at issue "involved, or was intended to promote, a federal crime of terrorism." Jackson incorporates by reference this Court's recent Order regarding the application of the §3A1.4(a) enhancement. *United States v. Terra Na'Asia Guthrie*, 2:20-cr-00541-RMG, Dkt. No.

24.[1] Jackson respectfully submits that there is no basis for distinguishing Jackson's case from Guthrie's with respect to this Guidelines enhancement, and consequently Jackson requests that this Court sustain his objection to the PSR. As a result, the proper guideline range is 37-46 months imprisonment, which becomes 60 months due to the statutory minimum term of imprisonment for violations of 18 U.S.C. §844(i).

I. **Jackson requests that this Court grant a downward departure because the conduct at issue in this case constituted a marked deviation from an otherwise law-abiding life.**

§5K2.20 authorizes this Court to depart from the Guidelines based upon a finding that a defendant's conduct constituted a "single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life." A single occurrence or transaction of aberrant behavior suggests a "spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning." *United States v. Glick*, 946 F.2d 335, 338 (4th Cir. 1991). The Fourth Circuit has noted that such conduct may warrant a departure, "because an act which occurs suddenly and is not the result of a continued reflective process is one for which the defendant may be arguably less accountable." *Id*. As previously noted, Jackson did not plan to commit the acts that bring him before this Court, his only intention as he joined the group of protestors downtown was to have his voice heard, and to express his sadness and frustration. Additionally, Jackson's conduct was limited in duration, and the most significant act – placing a flaming shirt onto a disabled and unoccupied patrol car – was completed in a moment, without any planning or time for meaningful reflection. And, most importantly, the conduct at issue in this case constitutes a substantial deviation from an otherwise law-

---

[1] It is undisputed that the protests in this case were a response to the death of George Floyd at the hands of Derek Chauvin. This Court concluded that "[t]he conduct of those officers involved in Mr. Floyd's death cannot reasonably be characterized as 'conduct by the government'" for the purposes of §3A1.4(a). 2:20-cr-00541 RMG, Dkt. No. 24 pp. 3-4.

abiding life. Jackson has a negligible criminal history, and has never engaged in conduct even remotely comparable to these charges. Jackson respectfully submits that his conduct in this case was "aberrant" pursuant to §5K2.20, and he requests that this Court grant a downward departure from the Guidelines calculation on this basis.

**II. Jackson requests that this Court grant a downward variance from the Guidelines based upon 18 U.S.C. §3553(a) factors, in particular (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, and (3) the need to avoid unwanted sentencing disparities.**

To comply with the four purposes described above, this Court must then consider the following seven factors identified in 18 U.S.C. § 3553(a)(1)-(7):

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) The need for the sentence imposed to reflect the seriousness of the offense, to afford adequate deterrence, to protect the public, and to provide educational or vocational training to the defendant;
> (3) The kinds of sentences available;
> (4) The kind of sentence and the sentencing range established pursuant to the U.S. Sentencing Guidelines;
> (5) Any pertinent policy statement issued by the Sentencing Commission;
> (6) The need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and
> (7) The need to provide restitution to any victims of the offense.

Consideration of the Guidelines is only "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 39 (2007). This Court must make an individualized assessment based on the facts presented in this case, and may not assume that the Guidelines range is *per se* reasonable. *Id*. at 30.

The nature and circumstances of this offense – acts that were committed without planning or forethought in the context of once-in-a-generation civil unrest – calls for a downward variance in this case. There is significant scientific evidence that demonstrates

that ordinary people are susceptible to uncharacteristic behaviors when acting as a member of a large and anonymous group. In such situations, "factors such as anonymity, group unity, and arousal can weaken personal controls (e.g. guilt, shame, self-evaluating behavior) by distancing people from their personal identities and reducing their concern for social evaluation."[2] Additionally, this chaotic and surreal environment "increases individual sensitivity to the environment and lessens rational forethought, which can lead to antisocial behavior."[3] Psychologists have regularly observed that people behave unpredictably and irrationally when they are in a large-group setting:

> So what can begin as a peaceful protest can rapidly devolve into riots due to group polarization. Group polarization is the tendency of people to make decisions that are more extreme when they are in a group setting as opposed to a decision made alone or independently. This is enhanced by the anonymity factor or deindividuation. This is a concept inherent in groups in which there is a diminishing understanding of one's sense of individuality. So an individual's perception of self will decrease making a person more willing to engage in antisocial or violent behavior because they believe they are protected by the group.[4]

As previously noted, Jackson live-streamed much of his conduct that evening on social media, and spoke directly into the camera with his face plainly visible. He spoke to a reporter at the scene, and his face was shown on camera during the interview. He made no effort to hide or disguise his identity, and the criminal conduct at issue in this case was undertaken in plain view of dozens of eyewitnesses. All of this demonstrates the fact that he was not thinking or behaving in his typical, rational manner. Simply put, Kelsey Jackson's conduct during the evening in question was absolutely contrary to his character

---

[2] Manstead, ASK; Hewstone, Miles (1996). Blackwell Encyclopedia of Social Psychology. Oxford, UK: Blackwell. pp. 152–156.

[3] Encyclopedia of Psychology. Washington, D.C.: American Psychological Association. pp. 374–377.

[4] Yasmine Ghattas, Medium.com, "The Psychology Behind Riots," (2020), https://medium.com/illumination/the-psychology-behind-riots-4b01530a83f8.

and his history, and absolutely contrary to the types of behavior one would observe if these actions were the product of planning and reflection. Jackson is gainfully employed, he supports two children, and other than this incident he has been a law-abiding and responsible citizen for most of his adult life. As Jackson's friends, co-workers, and loved ones will attest, his conduct during the protest was completely uncharacteristic of his typical behavior, and this incident could never have happened outside of the unique circumstances of the May 30 protests.

As a final matter, Jackson urges this Court to consider the need to avoid unwanted sentencing disparities. The last 14 months have been extremely tumultuous in various ways, with civil unrest breaking out in cities all over the country. In some cities, there have been large-scale riots that have continued regularly without significant law enforcement pushback. Rioters in Portland Oregon threw explosive devices at the federal courthouse,[5] and used power tools to break through protective barricades that were erected on the courthouse property.[6] Rioters in Seattle took over six city blocks in downtown Seattle for several weeks, excluding law enforcement from the area, and held the neighborhood hostage while issuing demands to the local government.[7] A police precinct in the Seattle occupied area was abandoned, and later vandalized and set on fire.[8] There were five shootings in the occupied zone, two of them fatal.[9] And on January 6, 2021, hundreds of rioters stormed the U.S. Capitol in Washington with the clear intent to

---

[5] https://www.oregonlive.com/crime/2020/07/federal-courthouse-door-shattered-fireworks-exploded-inside-leading-to-arrest-of-19-year-old-complaint-says.html

[6] https://www.newsweek.com/portland-protestors-use-power-tools-fireworks-courthouse-breach-attempt-1520464

[7] Chappell, Bill (July 1, 2020). "Seattle Police Clear Capitol Hill Protest Zone After Mayor Issues Emergency Order". NPR. Available at: https://www.npr.org/sections/live-updates-protests-for-racial-justice/2020/07/01/885954675/seattle-police-start-to-clear-capitol-hill-protest-zone-after-mayors-order

[8] *Detectives Need Help Identifying East Precinct Arson Suspect*. SPD Blotter. June 12, 2020. Available at: https://spdblotter.seattle.gov/2020/06/12/detectives-need-public-to-help-identify-east-precinct-arson-suspect/

[9] Brownstone, Sydney, *Shooting at Seattle's CHOP protest site kills one, leaves another in critical condition*". The Seattle Times (June 29, 2020).

disrupt a session of Congress and overturn a lawful election. The individuals responsible for these acts in Portland, Seattle, and Washington, if they have been charged with crimes at all, have often been charged with low-level misdemeanor offenses.[10] [11] Jackson takes full responsibility for his conduct and has been completely cooperative with the investigation of his actions. We do not make reference to unrelated conduct in other jurisdictions in order to minimize his conduct and culpability, but rather to point out that similar (and more egregious) conduct that was very obviously intended to intimidate law enforcement and interfere with government operations has been treated in a less heavy-handed manner elsewhere. Jackson respectfully urges this Court to impose a sentence that accurately reflects the seriousness of this offense, and avoids punishing Jackson in a manner that is out of proportion to the consequences faced by defendants in other jurisdictions.

## Conclusion

Based on the foregoing, Jackson respectfully moves this Court to: (1) depart from the applicable Guidelines range pursuant to §5K2.20, and (2) grant a downward variance from the Guidelines range pursuant to the 18 U.S.C. §3553(a) factors.

On this day, July 9, 2021 it is
RESPECTFULLY SUBMITTED,

*s/Christopher R. Geel*
Christopher R. Geel
GEEL LAW FIRM, LLC
P.O. Box 21771
Charleston, SC 29413
843-277-5080

---

[10] https://www.justice.gov/usao-dc/capitol-breach-cases

[11] See, e.g., Portland rioter Rowan Olsen, who is accused of throwing a mortar explosive device into the federal courthouse, which detonated in the proximity of several officers. Olsen is charged with misdemeanor offenses. *United States v. Olsen*, 3:20-cr-00204 (Dist. Or.).